PEOPLE v MORRIS

CRIMINAL LAW—POLICE—LAWFUL DUTY.

> State policemen were acting within the scope of their lawful duty when they accompanied defendant's wife into her home at her request to preserve law and order while she obtained clothes for herself and her baby even where they had not obtained prior judicial authorization for the entry.

Appeal from Alpena, Philip J. Glennie, J. Submitted Division 3 May 11, 1972, at Grand Rapids. (Docket No. 12323.) Decided June 27, 1972.

Charles E. Morris was convicted of resisting an officer in the lawful discharge of his duties. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Roger C. Bauer,* Prosecuting Attorney, for the people.

*James G. Orford,* for defendant on appeal.

Before: R. B. BURNS, P. J., and HOLBROOK and O'HARA,* JJ.

HOLBROOK, J. On November 19, 1970, a criminal complaint was filed which charged Charles Edward Morris with obstructing, resisting, opposing, and assaulting two Michigan state troopers, while they

REFERENCE FOR POINTS IN HEADNOTE
47 Am Jur, Searches and Seizures §§ 71, 72,
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

were in the lawful discharge of their duties.[1] On January 7, 1971, a preliminary examination was held and defendant Morris was bound over to the circuit court. On March 5, 1971, an information was filed in the Alpena County Circuit Court. On March 8, 1971, defendant Morris appeared before the presiding circuit judge, was arraigned on the information, stood mute and a plea of not guilty was entered on his behalf by the court.

On March 18, 1971, defendant Morris filed a motion to quash the information and dismiss the case. On the same date, the people filed an answer to the motion. On March 23, 1971, the trial court entered an order denying the motion.

On March 30, 31, and April 1, 1971, a jury trial was held in the circuit court and defendant Morris was found guilty as charged. On April 7, 1971, defendant Morris was sentenced to serve a term of not less than one nor more than two years in prison. On August 30, 1971, this Court granted defendant Morris' application for delayed appeal.

Defendant raises a single issue herein which he states as follows:

At the time the defendant was arrested for obstructing or resisting two Michigan state troopers in the performance of their duties (MCLA 750.479; MSA 28.747), were said police officers (1) lawfully performing a (2) lawful duty?

In his appellate brief, defendant contends that the police officers that he is accused of resisting or of obstructing in their lawful performance of their duty, were not in fact, lawfully performing their duty since they were attempting to make an arrest without lawful authority to do so. In support of this contention, the defendant argues, in part, as follows:

---

[1] MCLA 750.479; MSA 28.747.

"The police were aware that they had no reason to be going there [to the defendant's house], that there had been no crime that had been reported to them, they had no basis for suspecting a crime, they were not investigating a misdemeanor taking place in their presence, they were not investigating either a felony which took place in their presence or which did not take place in their presence, they were not going to a hide out of an alleged runaway from a state prison or county jail or any other place of detention. They were merely going to this residence for the purpose of gaining Mrs. Morris's clothes.

"Further, it appears that they went there without an arrest warrant and that they went there without a search warrant. * * *

"It appears that at the time the police entered the home on Piper Road and discovered the other parties therein, they had no basis for looking through the house, they were only there to see that Mrs. Morris could get the clothes that she wanted and that there was no basis for any other activity, there was no reason for any arrest, there was no lawful authority for making [an] arrest. * * *

"The police were not there on lawful and proper police work, because the defendant urges again, that it is not the function of the police to be picking up clothes for husbands and wives who have separated. The defendant does not urge that this is wrong, only that it is not in the nature of normal, lawful, that is to say authorized, police work."

The people answer that the state police were accomplishing a lawful and proper police function when they accompanied Mrs. Morris to her home because they were preserving law and order by accompanying Mrs. Morris to her home. The people admit "quite frankly, the state troopers did *not* have a search warrant nor did they have an arrest warrant". (Emphasis supplied.) The people further assert that Mrs. Morris requested the officers to accompany her to her home. The evidence is undisputed that she had rented the home in her name and that she had paid all the rent, including the

month in which the occurrence took place. Further that once the state troopers arrived there they did not need a search warrant to enter the home. They were not there to search for anything, but only to preserve law and order and see that Mrs. Morris was not harmed in any way while she was at her home to get the clothes for herself and her baby.

Therefore, the people claim the state troopers were lawfully inside the defendant's home and, thus, when they saw one Mr. Byers in bed with a young girl, the state troopers properly arrested Mr. Byers for contributing to the delinquency of a minor—a misdemeanor being committed in their presence.

The evidence presented at defendant Morris' trial clearly shows that the officers were present at the scene by reason of a request of Mrs. Morris to assist her in obtaining urgently needed clothes for herself and her baby. The act of the officers going with Mrs. Morris to her home was clearly a lawful police function.

While at the house, the officers observed in their presence the commission of a misdemeanor and lawfully arrested Mr. Byers who had committed the misdemeanor. It was at this point when the officers were attempting to arrest Mr. Byers that the defendant interfered and obstructed the officers in the performance of their legal duty. Under these facts we hold that at the time the state police troopers *were* (1) lawfully performing a (2) lawful duty.

The question of whether defendant did in fact obstruct, resist, oppose and assault the two officers at the time they were arresting Mr. Byers and attempting to take him into custody was properly submitted to the jury for determination.

Affirmed.

All concurred.,