PEOPLE v INGRAM

Docket No. 78-1920. Submitted May 12, 1980, at Lansing.—Decided
August 13, 1980. Leave to appeal applied for.

Roscoe Ingram was charged with carrying a concealed weapon
and was bound over for trial. He moved to dismiss the charge,
claiming that he had a sufficient possessory interest in the
street abutting his property to bring him within the scope of
the exemption to the concealed weapons statute, that the police
officer who arrested him had no authority to ask for his driver's
license, and that he was not given a *Miranda* warning prior to
questioning by police. Recorder's Court of Detroit, George W.
Crockett, III, J., treated defendant's motion as a motion to
suppress evidence, granting the motion and dismissing the case.
The people appeal. *Held:*

1. An abutting landowner does not retain a sufficient posses-
sory interest in a street to bring him within the scope of the
statutory exemption to the concealed weapons statute as con-
templated by the Legislature. The trial court's reliance on this
exception in ordering suppression of evidence constituted error.

2. The police officer who arrested the defendant had no
reasonable cause nor even a mere inkling to believe that a
criminal activity had been or was about to be committed by the
defendant upon observing defendant unlocking an illegally
parked automobile. Thus, an investigative stop was not justi-
fied. This illegal stop tainted the subsequent search and arrest
of the defendant, and there was no error by the trial court in
suppressing the evidence against the defendant and dismissing

References for Points in Headnotes

[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2-5] 79 Am Jur 2d, Weapons and Firearms § 18.
     Scope and effect of exceptions in statute forbidding carrying of
weapons as to person on his own premises or at his own place of
business. 57 ALR3d 938.
[6, 7] 5 Am Jur 2d, Arrest § 38.
     68 Am Jur 2d, Searches and Seizures § 37.
[7] 29 Am Jur 2d, Evidence § 412.
[8] 68 Am Jur 2d, Searches and Seizures §§ 39, 40.

the case. In view of this conclusion, the issue concerning the necessity of a *Miranda* warning need not be addressed.

Affirmed.

1. STATUTES — CONSTRUCTION OF STATUTES — LEGISLATIVE INTENT.

The cardinal rule of statutory construction is to ascertain and give effect to legislative intent.

2. WEAPONS — CONCEALED WEAPONS — EXEMPTIONS — LEGISLATIVE INTENT — STATUTES.

The basic intent of the Legislature as indicated in the concealed weapons statute is that weapons should not be carried where they might be used to take lives, and, in light of this intent, the purpose of the statutory exemptions for a dwelling house or place of business or other lands possessed by a person is to allow persons to defend those areas in which they have a possessory interest (MCL 750.227; MSA 28.424).

3. WEAPONS — CONCEALED WEAPONS — EXEMPTIONS — STATUTES.

A person does not have a sufficient possessory interest in his place of employment, in an area of a prison in which he is incarcerated, or in a taxi of which he is the driver, but he does have such an interest in a leasehold, even though it is being used for an illegal purpose, to bring him within the scope of the statutory exemptions to the concealed weapons statute (MCL 750.227; MSA 28.424).

4. WEAPONS — CONCEALED WEAPONS — LANDOWNERS.

A street which abuts a person's property does not deserve the special status wherein a citizen may rightfully carry a concealed weapon, since it is public domain, the landowner having no right to restrict passage on the street in front of his land to his own invitees.

5. WEAPONS — CONCEALED WEAPONS — LEGISLATIVE INTENT — REAL PROPERTY LAW — STATUTES.

A person does not retain the type of possessory interest in protecting and defending the street which was contemplated by the Legislature when it created such an exemption to the concealed weapons statute, whether or not he retains title to the midpoint of the street which abuts his property according to property law (MCL 750.227; MSA 28.424).

6. CRIMINAL LAW — CRIMINAL CONDUCT — SEARCHES AND SEIZURES — ARREST — UNCONSTITUTIONAL ORDINANCE.

A questioning and subsequent search by a police officer who had probable cause to arrest a person on the basis of conduct which

violated an ordinance later found to be unconstitutional is not rendered illegal by such a ruling.

7. CRIMINAL LAW — CRIMINAL CONDUCT — SEARCHES AND SEIZURES — INVESTIGATIVE STOP — SUPPRESSION OF EVIDENCE.

An investigative stop by a police officer is not justified where a person merely walks up to and unlocks and attempts to enter an illegally parked motor vehicle, and a search and arrest subsequent to such an illegal stop is tainted, requiring suppression of any evidence then seized.

8. CRIMINAL LAW — CRIMINAL CONDUCT — INVESTIGATIVE STOP — MOTOR VEHICLES.

A police officer has no reason to require a person who merely attempts to enter an illegally parked motor vehicle to show his driver's license since a parking citation is issued to the owner of a vehicle, not the driver.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Robert J. Sheiko,* Assistant Prosecuting Attorney, for the people.

*Angela R. Sims,* for defendant on appeal.

Before: T. M. BURNS, P.J., and R. M. MAHER and M. E. CLEMENTS,* JJ.

PER CURIAM. The defendant was charged with carrying a concealed weapon, MCL 750.227; MSA 28.424. Defendant was bound over for trial by an examining magistrate on October 25, 1977. On December 1, 1977, the defendant filed a motion to dismiss the charge. A hearing was held on December 9, 1977, before a judge of the Detroit Recorder's Court, who treated it as a motion to suppress the evidence of the gun. The trial court granted defendant's motion to suppress and dismissed the case upon the prosecutor's indication that he could

---

* Circuit judge, sitting on the Court of Appeals by assignment.

not proceed without evidence of the gun. From this dismissal, the people appeal as of right.

The facts of this case are not in dispute. Officer Wood of the Detroit Police Department testified at the preliminary examination that on October 17, 1977, he observed a vehicle double parked in front of 3551 Second Street in Detroit. The car was unoccupied. As his partner began to write a citation for the traffic violation, Officer Wood observed the defendant walk up to the vehicle, unlock it, and begin to get inside. Officer Wood approached the defendant and asked him whether it was his car. Defendant responded in the affirmative. The officer then asked to see defendant's driver's license. As the defendant reached for the wallet which was in his back pocket, the officer observed a large bulge underneath the front of his waist area. Officer Wood asked the defendant if he had a gun, and the defendant answered, "Yes." Officer Wood asked the defendant whether he had a permit to carry the gun, and the defendant answered, "No." At that time, the officer seized the gun and placed the defendant under arrest. Defendant had not been informed of his *Miranda*[1] rights prior to his arrest.

The first issue to be resolved in this appeal involves the interpretation of the exemption contained in MCL 750.227; MSA 28.424 with respect to persons who carry a weapon on land in which they have a possessory interest. The concealed weapons statute provides in pertinent part:

"Sec. 227. A person who shall carry a dagger, dirk, stiletto, or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

any vehicle operated or occupied by him, *except in his dwelling house or place of business or on other land possessed by him; * * *." (Emphasis added.)*

The defendant contends that he had a possessory interest in the street abutting his property, and he, therefore, comes within the exception enumerated above. The trial court agreed with defendant's argument in its ruling on suppression of the weapon. As there is no previous case law in Michigan on this precise point, we treat the issue as a matter of first impression.

We begin our analysis by noting that the cardinal rule of statutory construction is to ascertain and give effect to legislative intent. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956), *Kizer v Livingston County Board of Comm'rs,* 38 Mich App 239, 246; 195 NW2d 884 (1972).

Various cases, which have discussed the exemptions to the concealed weapons statute, have stated the legislative purpose in its enactment. In *People v Clark,* 21 Mich App 712, 715-716; 176 NW2d 427 (1970), this Court said:

"It is hornbook law that statutes must be read so as to facilitate the intent of the legislature. *People v Bailey* (1968), 10 Mich App 636. 'The purpose of the concealed weapons statute was to prevent men in sudden quarrel * * * from drawing concealed weapons and using them without prior notice to their victims that they were armed,' *People v Jones* [12 Mich App 293; 162 NW2d 847 (1968)], *supra,* 295. And in *People v Bailey, supra,* beginning at p 639, we stated: 'the basic intent of the legislature as indicated in the concealed weapons statute was that weapons should not be carried where they might be used to take lives.'

"It is within the light of this legislative intent that we read the statutory exemptions for 'his dwelling house or place of business or other lands possessed by

him.' The purpose of the exemptions was to allow persons to defend those areas in which they have a possessory interest. This is the clear import of the phrase 'possessed by him' which modifies the three areas set forth in the statute. *United States v Waters* (D DC, 1947), 73 F Supp 72."

In *Clark,* the Court held that the defendant, an employee of a corporation, did not have a sufficient possessory interest in his place of employment to bring him within the scope of the statutory exemption.

In *People v Gatt,* 77 Mich App 310; 258 NW2d 212 (1977), the police raided a "blind pig" being conducted on premises leased by the defendant. The defendant was convicted of carrying a concealed weapon on these premises. This Court reversed, finding that defendant's valid possessory interest in the property brought him within the ambit of the exception, despite the fact that the property was being used for an illegal purpose.

In *People v John Alexander,* 82 Mich App 486; 266 NW2d 489 (1978), the Court found that the exception to the concealed weapons statute was inapplicable to an inmate who was arrested at Jackson State Prison. The Court held that a prison inmate does not have a possessory interest in any area of a prison which he has the right to defend with a weapon. The final Michigan case which interprets the exception to the concealed weapons statute is *People v Brooks,* 87 Mich App 515; 275 NW2d 26 (1978), where the Court strictly construed the statute and held that a taxi driver who carries a concealed weapon in his taxi does not come within the exception, because the words "or on other land possessed by him" modified "place of business", and a taxicab is not "land".

Defendant relies on property law in arguing that

he was on "other land possessed by him" at the time of his arrest. Defendant alleges that an owner of property retains actual title to the middle of the street which abuts his property, and the public only has an easement in that land.

In *Gunn v Delhi Twp,* 8 Mich App 278, 282; 154 NW2d 598 (1967), this Court summarized the effect of public dedication of land on the title to that land as follows:

"Generically, a dedication is 'an appropriation of land to some public use, accepted for such use by or in behalf of the public.' *Clark v City of Grand Rapids* (1952), 334 Mich 646, 656, 657. Two types of dedications have been specifically recognized in this State, statutory dedication and common-law dedication; the distinction was explicitly approved by the Supreme Court prior to the turn of the century. *Alton v Meeuwenberg* (1896), 108 Mich 629. Statutory dedication may result from compliance with the plat act of 1929, CL 1948, §§ 560.1-560.80, as amended (Stat Ann 1953 Rev and Stat Ann 1965 Cum Supp §§ 26.431-26.511). The definition of common-law dedication was given in *Alton v Meeuwenberg, supra,* at p 636, and has been incorporated without substantial change into CL 1948, § 221.20, *supra,* * * *.

"The distinction must be stated because of the difference in result hinging on the type of dedication. The traditional position was stated in *Village of Grandville v Jenison* (1890), 84 Mich 54, 65:

" 'The effect of a dedication under the statute has been to vest the fee in the county, in trust for the municipality intended to be benefited, whereas, at common law, the act of dedication created only an easement in the public.' "

We note that MCL 221.20; MSA 9.21 states generally that all streets which are used as public streets for more than 10 years shall be deemed public highways. See also, MCL 560.253; MSA 26.430(253), which provides that land dedicated for

public streets conveys fee title to the municipality to hold in trust for this use.

The record does not indicate whether the defendant's street was dedicated to the public under common law or under statutory law. However, we do not deem the distinction to be critical for the purpose of interpreting the exception to the concealed weapons statute. The Legislature created this exception in recognition of the special rights of a property owner while he remains within his own domain, where no one may intrude unless invited. We do not deem that the street which abuts this property is an area which deserves the special status wherein a citizen may rightfully carry a concealed weapon. This is because the street is public domain which may be used by all. The abutting landowner has no right to restrict passage on the street in front of his land to his own invitees. Whether or not he retains the title to the midpoint of the street in property law, he does not retain the type of possessory interest in protecting and defending the street which was contemplated by the Legislature when it created the exemption. We therefore find that the trial court erred in relying on the exception to MCL 750.227; MSA 28.424, in ordering suppression of the gun.

The second issue raised by the people for our consideration is whether the police officer had the authority to ask the defendant for his driver's license where the defendant was observed unlocking an illegally parked automobile. The trial court ruled that there was no basis for the police to ask for a driver's license on a parking violation and that "but for" defendant's attempt to produce the license, the officer would not have observed the gun in question. The trial court ruled further that

the city ordinance authorizing police officers to require persons to identify themselves was unconstitutional.

The ordinance in question is Detroit Municipal Code § 39-1-52.3, which authorizes police officers to stop and question a person where the officer has reasonable cause to believe that the person's behavior indicates that there is criminal activity afoot. The ordinance makes the person's refusal or inability to identify himself unlawful. This Court held that the ordinance was void for vagueness in *People v DeFillippo,* 80 Mich App 197; 262 NW2d 921 (1977), which was issued several days before the trial court's decision in the instant case. However, at the time of the arrest in question, the statute had not yet been found unconstitutional, so a police officer would have had probable cause to arrest on the basis of conduct which violated the then-valid ordinance. The search would not be rendered illegal by the Court's later ruling that the ordinance was unconstitutional. *Michigan v DeFillippo,* 443 US 31; 99 S Ct 2627; 61 L Ed 2d 343 (1979).

However, we could not uphold the police officer's request to see defendant's driver's license in the instant case even if the ordinance were valid, because there was no "reasonable cause" nor even a "mere inkling" to believe that a criminal activity had been, or was about to be, committed by the defendant. At the time of his arrest, defendant had merely walked up to, and had unlocked, an illegally parked vehicle. These facts do not justify an investigative stop. See, *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), *People v Tebedo,* 81 Mich App 535; 265 NW2d 406 (1978). A parking citation is issued to the owner of a vehicle, not to the driver. Defendant was not driving the car and

had merely attempted to enter it when stopped by the officer. Thus, there was no reason to require him to show his driver's license.

We find, therefore, that the illegal stop by Officer Wood tainted his subsequent search and arrest, since the officer would not have been in a position to observe the suspicious bulge if defendant had not been reaching for his wallet. The trial court ruled correctly on this issue, and, on this basis, we uphold its decision to suppress evidence of the pistol and dismiss the case against the defendant. In view of our conclusion, we need not address the people's final issue concerning the necessity of a *Miranda* warning prior to questioning the defendant.

Affirmed.