## PEOPLE v LITTLE

Docket No. 87021. Decided June 5, 1990. On application by the people
for leave to appeal, the Supreme Court, in lieu of granting
leave, reversed the judgments of the Court of Appeals and the
circuit court and remanded the case to the circuit court for
trial.

Kenneth P. Little was arrested for driving while intoxicated.
After he was taken to the Walled Lake police station for a
Breathalyzer test, he assaulted the police officer who was
attempting to administer the test. Thereafter, he was charged
with obstructing a police officer's attempts to keep the peace.
The 52nd District Court, Harold M. Bulgarelli, J., rejected the
defendant's argument that he should be prosecuted for simple
assault and battery and bound him over on the original charge.
The Oakland Circuit Court, Jessica R. Cooper, J., granted the
defendant's motion to quash the information and remanded the
case to the district court for trial on a charge of assault and
battery, concluding that MCL 750.479; MSA 28.747 applies only
to obstructive behavior that precedes or accompanies an arrest.
The Court of Appeals, Beasley, P.J., and McDonald and
Murphy, JJ., affirmed in an opinion per curiam, holding that
the defendant should have been charged under MCL 750.506a;
MSA 28.774(1), and that the trial court did not abuse its
discretion in dismissing the resisting and obstructing charge
(Docket No. 113463). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice Riley and
Justices Brickley, Cavanagh, Boyle, and Griffin, the Su-
preme Court *held:*

The purpose of MCL 750.479; MSA 28.747 is to protect a
police officer from physical harm in his efforts to keep the
peace, including ordinary police functions that do not directly
involve placing a person under arrest.

MCL 750.506a; MSA 28.774(1) does not indicate any legisla-
tive intent to limit the prosecutor's charging discretion. The
enactment of a statutory provision governing a set of facts does
not automatically preclude the prosecutor from proceeding
under a different statutory provision that also encompasses the
alleged facts. Thus, MCL 750.506a; MSA 28.774(1) does not

prevent the prosecutor from making the discretionary decision to prosecute this case under MCL 750.479; MSA 28.747.

Justice ARCHER concurred in the result only.

Reversed and remanded.

Justice LEVIN, dissenting, stated that when the police officers were attempting to administer the Breathalyzer test, they were not engaged in "lawful acts, attempts and efforts to maintain, preserve and keep the peace," and therefore the defendant's interference with the administration of the test did not violate the statute. Peremptory reversal should be reserved for those cases in which the law is settled and no factual assessment is required. In this case, because there is a conflict in the decisions of the Court of Appeals, and the law is not settled, peremptory disposition is not appropriate; rather leave to appeal should either be granted or denied.

179 Mich App 445; 446 NW2d 309 (1989) reversed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Richard C. Williams,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*William E. Ziem* for the defendant.

PER CURIAM. After being arrested for driving while intoxicated, the defendant allegedly assaulted a police officer. He was charged under the statute that prohibits obstructing an officer's efforts to keep the peace. The circuit court granted a motion to quash, evidently concluding that the statute only applies to obstructive behavior that precedes or accompanies an arrest. The Court of Appeals affirmed. We reverse, because the plain language of the statute covers the events that are said to have taken place in this case.

I

In the early morning hours of June 1, 1988, a uniformed Oakland County Sheriff's deputy stopped the defendant's pickup truck because the

defendant was driving erratically.[1] After the defendant failed field sobriety tests, and after a preliminary breath test indicated a blood-alcohol level of 0.237 percent, the deputy arrested the defendant. The defendant did not resist arrest. He was transported to the Walled Lake police station, where a second uniformed officer was waiting to administer a Breathalyzer test.

At the station, the defendant was verbally abusive. He also spat upon the officer who was attempting to administer the Breathalyzer test. As the defendant prepared to spit on the officer again, the officer raised a hand toward the defendant. At that point, the defendant kicked the officer twice in the groin area.

The defendant was charged with a violation of MCL 750.479; MSA 28.747, which is sometimes referred to as the resisting-arrest statute.[2] The

---

[1] To date, the only testimonial record is the transcript of the preliminary examination, at which two police officers testified. The defendant has yet to provide his account. For purposes of this opinion, we accept the testimony of the officers.

[2] Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or attempted to serve or execute the same, or *who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace,* shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than two years, or by a fine of not more than one thousand dollars. [MCL 750.479; MSA 28.747. Emphasis supplied.]

complaint and warrant (and later the information) alleged that the defendant obstructed the officer's attempts to keep the peace.[3]

II

At the conclusion of the defendant's preliminary examination, the assistant prosecutor moved that the defendant be bound over for trial, as charged. Defense counsel's response included an argument that MCL 750.479; MSA 28.747 was inapplicable to these facts. Counsel said that the defendant had been overcharged, and that this case should instead be prosecuted as a simple assault and battery.[4]

The district judge rejected the argument, and bound the defendant over on the original charge.

In circuit court, the defendant moved that the information be quashed. In his motion, he relied upon a case in which the Court of Appeals had described the elements of the crime in terms of events that take place at the time of an arrest.[5] In answering the motion, the prosecutor relied upon

[3] These documents allege that the defendant "did knowingly and wilfully obstruct, resist, oppose, assault, beat or wound [the officer], while [he] was engaged in lawful acts, attempts and efforts to maintain, preserve and keep the peace, to-wit: assisting in taking of breathalyzer . . . ."

[4] MCL 750.81; MSA 28.276.

[5] The elements of the crime of resisting arrest are: (1) the defendant must have resisted arrest; (2) the arrest must be lawful; (3) the person making the arrest must have been at the time an officer of the law; (4) at the time of the arrest, the defendant must have intended to have resisted such officer; (5) at the time of the arrest, the defendant must have known that the person he was resisting was an officer; and (6) at the time of the arrest, the defendant must have known that the officer was making an arrest. See CJI 13:1:02. [*People v Julkowski,* 124 Mich App 379, 383; 335 NW2d 47 (1983).]

a case in which the Court of Appeals described the offense more broadly.[6]

The circuit court's decision was that the information should be quashed, and that the case should be remanded to district court for trial on a charge of assault and battery. The circuit judge explained:

I think that if you take a look at the legislative intent in terms of the resisting a police officer in

[6] In *People v John Weatherspoon,* 6 Mich App 229; 148 NW2d 889 (1967), a police officer was sitting in his patrol car doing some paperwork, when the defendant opened the door of the police car and assaulted the officer. The Court of Appeals then offered this analysis of the statute's applicability:

The position of the defendant is that the legislature did not intend this statute to punish offenders who commit a simple assault on any police officer while on duty. More simply stated, the argument is that when the officer was assaulted, he was not engaged in preserving the peace.

In *People v Krum* (1965), 374 Mich 356 [132 NW2d 69], the Supreme Court upheld a conviction based on the above quoted statutory excerpt where the accused interfered with a State trooper's duty to inspect automobiles as they arrived at a blockade set up as part of a search for prison escapees. From a factual analysis, [the] "acts, attempts and efforts" [of the officer in *John Weatherspoon*] seem comparable to those being executed by the State trooper in *People v Krum, supra.* But more important than this parallel, is that on page 361 of the *Krum Case, supra,* the Court recognized the relationship between the statute and the general rule which provides:

" 'The obstruction of or resistance to *a public officer in the performance of his duties* is an offense at common law, and by statute in all jurisdictions.' (39 Am Jur, Obstructing Justice, § 8, p 506.)" (Emphasis supplied [by the Court of Appeals].)

The emphasized language leads us to conclude that the broad statutory clause "maintain, preserve and keep the peace" includes all of the duties legally executed by a police officer. A police officer is expected to be, and should be, in a constant state of readiness to quell any disturbance. [The officer] had parked his automobile at the intersection to watch for [John Weatherspoon's brother] who was wanted for assault. The mere fact that this officer was not in the act of making an arrest when he was assaulted does not necessarily mean that he was not preserving the peace. [*John Weatherspoon,* 6 Mich App 231-232.]

the performance of his duties, the purpose is to be
able to maintain the peace, and I think that's the
maintaining the peace in the public. So that when
we take a look at the broad scope and the defini-
tion of the obstruction, the resistance of a public
officer in the performance of his duties, the reason
they raised that from a misdemeanor to a high
misdemeanor in essence was so that the public
officer could not be interfered with in the public in
terms of preserving the peace. That they would be
able to continue their duties, that they would not
be resisted in that and that they would not be
preyed upon as in [*People v John Weatherspoon,* 6
Mich App 229; 148 NW2d 889 (1967)].

But here you have someone who is already
arrested and is incarcerated and it's a matter of
being able to maintain control within the Jail
setting. And I don't think that that's what that
statute is for, and I will grant the motion of the
Defendant and remand the matter to the District
Court for trial on assault and battery.

After granting the prosecutor's application for
leave to appeal, the Court of Appeals affirmed the
order of the circuit court. 179 Mich App 445; 446
NW2d 309 (1989).

In stating its analysis, the Court of Appeals
acknowledged some merit to the prosecutor's argu-
ment:

The stated purpose of § 479 seems to support the
people's application of the statute, the purpose
being to punish an assault upon a public officer in
the discharge of his duty by a penalty more severe
than that imposed for assaults on private citizens,
*People v Tompkins,* 121 Mich 431; 80 NW 126
(1899), *United States v Feola,* 420 US 671; 95 S Ct
1255; 43 L Ed 2d 541 (1975), and protect officers
from physical violence and harm. *People v Kretch-
mer,* 404 Mich 59; 272 NW2d 558 (1978), *People v
Baker,* 127 Mich App 297; 338 NW2d 391 (1983).
Additionally, in *Weatherspoon, supra,* a panel of

this Court found the broad statutory clause "maintain, preserve and keep the peace" to include all duties legally executed by a police officer. In so finding, the Court relied on *People v Krum*, 374 Mich 356, 361; 132 NW2d 69 (1965) [cert den 381 US 935 (1965)], wherein our Supreme Court recognized the statute's tie to the common-law crime of obstructing an officer, and acknowledged the general rule: " 'The obstruction of or resistance to a public officer in the performance of his duties is an offense at common law, and by statute in all jurisdictions.' (39 Am Jur, Obstructing Justice, § 8, p 506.)" [*Id.* at 448.]

However, the Court of Appeals then indicated that its research had "failed to uncover precedent wherein the statute in question has been applied to a postarrest in-custody defendant." *Id.* at 448-449.

The Court of Appeals further noted that the Legislature has provided in MCL 750.506a; MSA 28.774(1)[7] that a sentence for simple assault may be enhanced under the circumstances found in the present case. In reliance upon that statute, the

[7]     (1) If a person, lawfully imprisoned in a jail or other place of confinement established by law, for any crime or offense, or lawfully imprisoned in a jail or other place of confinement after being sentenced for a crime or offense and awaiting or in transit to or from a prison or other place of confinement, commits any offense defined in [MCL 750.81 through 750.86; MSA 28.276 through 28.281], the court may impose the appropriate penalties prescribed in [MCL 750.81 through 750.86; MSA 28.276 through 28.281] to run consecutively with any sentence which the person is already serving.

(2) If a person, lawfully detained in a jail or other place of confinement established by law, and awaiting arraignment, examination, trial or sentencing for any crime or offense, commits a subsequent offense defined in [MCL 750.81 through 750.86; MSA 28.276 through 28.281], if convicted of the crime or offense for which he was detained at the time he committed the subsequent offense, any sentences imposed for conviction of the prior offense and for conviction of the subsequent offense under [MCL 750.81 through 750.86; MSA 28.276 through 28.281] may run consecutively.

Court of Appeals concluded that "the instant defendant should have been charged under MCL 750.506a; MSA 28.774(1)," and thus the Court of Appeals found "no abuse of discretion in the trial court's dismissal of the resisting and obstructing charge." *Id.* at 449.

The prosecutor has applied to this Court for leave to appeal.

### III

The Court of Appeals is correct that no previously reported decision is on point. However, it is clear that the events alleged in this case fall within the plain language of the statute.

Such an application of the statute accords with its purpose, which is to protect officers from physical harm. *People v Kretchmer, supra* at 64. Moreover, there is ample authority that an officer's efforts to "keep the peace" include ordinary police functions that do not directly involve placing a person under arrest. *People v Krum, supra* at 362, *People v John Weatherspoon, supra* at 232.[8]

The Court of Appeals acknowledged the general applicability of these principles. It nevertheless concluded that the circuit court was correct, largely in reliance upon the existence of a sentence-

---

[8] As noted above, the defendant has relied upon *People v Julkowski,* n 5 *supra* at 383, in which the Court of Appeals described the elements of the crime in terms that suggested that the offense can take place only in conjunction with a lawful arrest. For the Court of Appeals to have framed the elements in that fashion is quite understandable, in light of the facts of *Julkowski,* but those facts are quite unlike those of the present case. We observe that the Court of Appeals panel in *Julkowski* included a reference to CJI 13:1:02 which describes the elements in terms similar to those used by the Court of Appeals in *Julkowski.* But CJI 13:1:02 is only one of four alternatives to be employed in different factual scenarios. CJI 13:1:03 more closely corresponds to the facts of the present case, and we see no indication that the Court of Appeals meant in *Julkowski* that CJI 13:1:02 was the *only* correct account of the elements of this statutory offense.

enhancement provision that permits the imposition of a consecutive sentence when an assault is committed by a person who is already under arrest. MCL 750.506a; MSA 28.774(1). The Court of Appeals said that because this defendant "should" have been charged under that sentence-enhancement provision, the trial court did not abuse its discretion.

We disagree. The Legislature's enactment of MCL 750.506a; MSA 28.774(1) does not indicate any legislative intent to limit the prosecutor's charging discretion.[9] As we explained in *People v Ford,* 417 Mich 66; 331 NW2d 878 (1982), the enactment of a statutory provision governing a set of facts does not automatically preclude the prosecutor from proceeding under a different statutory provision that also encompasses the alleged facts. See also, generally, *People v Petrella,* 424 Mich 221, 261-263; 380 NW2d 11 (1985), and *People v Johnson,* 427 Mich 98, 113-114; 398 NW2d 219 (1986) (opinion of BOYLE, J.).

In deciding this case, it is not necessary for us to consider further the nature and extent of a prosecutor's charging discretion. As the prosecutor has observed in his argument to this Court, MCL 750.506a; MSA 28.774(1) is a sentence-enhancement measure, not a prohibition of particular conduct. We therefore believe it clear under *Ford* that the legislative enactment of MCL 750.506a; MSA 28.774(1) does not prevent the prosecutor from making the discretionary decision to prosecute this case under MCL 750.479; MSA 28.747.

In lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the

---

[9] An example of a clear legislative expression of its intent to limit prosecutorial charging discretion is found in 1988 PA 20, which established the offenses of first- and second-degree retail fraud. See MCL 750.356c(3), 750.356d(2); MSA 28.588(3)(3), 28.588(4)(2).

circuit court, and we remand this case to the circuit court for trial on the information. MCR 7.302(F)(1).

RILEY, C.J., and BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN, JJ., concurred.

ARCHER, J. I concur in the result only.

LEVIN, J. (*dissenting*). The defendant, Kenneth P. Little, was arrested for drunk driving and transported to the police station. On evidence tending to show that he struck a police officer while the officer was attempting to administer a Breathalyzer test, Little was charged[1] with obstructing and resisting an officer in his "lawful acts, attempts and efforts to maintain, preserve and keep the peace, to wit: assisting in taking of breathalyzer . . . ."[2]

---

[1] The information charged that Little

on or about June 1, 1988 did knowingly and wilfully obstruct, resist, oppose, assault, beat or wound Christopher Helgert, a police officer with the Wolverine Lake Police Department, while said officer was engaged in lawful acts, attempts and efforts to maintain, preserve and keep the peace, to-wit: assisting in taking of breathalyzer; Contrary to the statute in such case made and provided and against the peace and dignity of the People of the State of Michigan.

Sec. 750.479, CL 1979; MSA 28.747. [750.479-B]. Misdemeanor: 2 Years or $1,000.00

Resisting and obstructing police officer preserving peace

[2] Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council

Little was bound over by the magistrate on the basis of the testimony of two police officers which tended to show that Little spat on the Breathalyzer, was about to spit on one of the officers who then raised his hand, and that Little then kicked the officer twice in the groin. Little was subdued by the officers.

Little moved to quash the information, claiming that administering a Breathalyzer test is not, unless the officer is "out on the road," maintaining, preserving, and keeping the peace. The circuit judge agreed and quashed the information. She said that the purpose of the statute is to protect against interference with the performance in public places of the officer's duties, and that it was not intended that the statute apply to the acts committed by Little while he was detained in a jail setting.

The Court of Appeals affirmed, stating that "our research has failed to uncover precedent wherein the statute in question has been applied to a postarrest, in-custody defendant." 179 Mich App 445, 448-449; 446 NW2d 309 (1989). The Court added that there is another statute[3] applicable where an offense is committed by a person lawfully imprisoned or detained that "enhances the

---

of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or attempted to serve or execute the same, or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than two years, or by a fine of not more than one thousand dollars. [MCL 750.479; MSA 28.747.]

[3] MCL 750.506a; MSA 28.774(1).

punishment for a simple assault" under the circumstances of the instant case. *Id.,* p 449.[4]

The per curiam opinion reverses the decision of the Court of Appeals "because the plain language of the statute covers the events that are said to have taken place in this case."[5]

I

The per curiam opinion appears to acknowledge that " 'keep the peace' " are key words,[6] but does not state what is the "plain meaning" of the "plain language" of the statute.

Nor, on somewhat hasty and inadequate research, have I found a definition of "preserve" or "keep the peace."[7] It appears, however, that there

---

[4] The Court concluded:

> As we conclude the instant defendant should have been charged under MCL 750.506a; MSA 28.774(1), we therefore find no abuse of discretion in the trial court's dismissal of the resisting and obstructing charge. [*Id.*]

I agree with the majority that the consecutive sentencing so provided has no bearing on the question whether Little was properly charged under § 479 of the Penal Code and that the question whether he was properly charged is not one that is confided to the discretion of the circuit judge when reviewing the magistrate's exercise of discretion.

[5] *Ante,* p 753. The body of the opinion repeats that statement:

> [I]t is clear that the events alleged in this case fall within the plain language of the statute. [*Ante,* p 759.]

[6] Moreover, there is ample authority that an officer's efforts to "keep the peace" include ordinary police functions that do not directly involve placing a person under arrest. *People v Krum* [374 Mich 356, 362; 132 NW2d 69 (1965)], *People v John Weatherspoon* [6 Mich App 229, 232; 148 NW2d 889 (1967)]. [*Ante,* p 759.]

[7] It appears that the expression "keep the peace" was originally "keep the King's peace."

is plentiful authority concerning what constitutes "breaking the peace." This Court said:

> In general terms the offense is a *violation of public order, a disturbance of the public tranquillity,* by any act or conduct inciting to violence, or tending to provoke or excite others to break the peace. Each case where the offense is charged must depend upon the time, *place,* and circumstances of the act. [*People v Johnson,* 86 Mich 175, 177; 48 NW 870 (1891). Emphasis added.]

Reading that definition together with the statutory language, "maintain and preserve" or "keep the peace,"[8] it appears that the act of the defendant must have occurred in a setting where the officer was seeking to maintain and preserve "public order" or "tranquility" and, thus, that the defendant's conduct interfered with the officer's "lawful acts, attempts and efforts to maintain, preserve and keep [public order or tranquility]."

The only persons in the room where the Breathalyzer was located were two police officers and Little. In that setting, the officers were not seeking to maintain and preserve public order or tranquility. Thus, Little's acts did not interfere with the officer's efforts to maintain and preserve public order or tranquility.

A different question might be presented if a number of persons had been arrested and the officers were maintaining and preserving, at the station house, the tranquility of those who had been arrested and others who may have been there with them.

---

[8] See *In re Richter,* 226 Neb 874, 876; 415 NW2d 476 (1987) (the phrase, "[p]reservation of the peace," in an obstructing and resisting statute, was defined as "maintaining the tranquillity enjoyed by members of a community where good order reigns").

II

In *People v Krum,* 374 Mich 356; 132 NW2d 69 (1965), the Court held that the defendant was properly convicted of obstructing an officer in his efforts to maintain, preserve, and keep the peace on evidence that he interfered with an officer who was conducting a roadblock.[9]

In *People v John Weatherspoon,* 6 Mich App 229; 148 NW2d 889 (1967), the defendant was convicted of violating the statute on evidence that he opened the door of a police car and assaulted an officer. The Court of Appeals, referring to *Krum,* said that the officer was engaged in preserving the peace when he was assaulted. The Court of Appeals explained:

> [The defendant in *Krum*] interfered with a State trooper's duty to inspect automobiles as they arrived at a blockade set up as part of a search for prison escapees. From a factual analysis, Officer Nevelle's "acts, attempts and efforts" seem comparable to those being executed by the State trooper in *People v Krum, supra.* But more important

---

[9] Krum and two companions were returning from a fishing trip and were stopped at the Mackinac Bridge by state police who were looking for prison escapees. A passenger responded to a trooper that they could not search the car without a search warrant. The trooper ordered the car driven to the side of the bridge out of the line of traffic. An argument ensued between the defendant and the trooper.

The trooper then resumed his station where he was observing cars as they crossed the bridge, and Krum returned to his car. Krum then approached the trooper again. The trooper testified that in this second encounter, Krum

> interposed himself between the trooper and the car to be inspected, finally brushing against the trooper and moving the automatic carbine from the position in which it was held by the trooper; that the trooper told defendant he was under arrest and ordered him to go to the police car; that defendant answered, "I don't have to and you can't make me"; that the trooper than took him by the wrist and, when he wouldn't move, pulled him over to the police car. [*Id.,* p 359.]

than this parallel, is that on page 361 of the *Krum Case, supra,* the Court recognized the relationship between the statute and the general rule which provides:

" 'The obstruction of or resistance to *a public officer in the performance of his duties* is an offense at common law, and by statute in all jurisdictions.' (39 Am Jur, Obstructing Justice, § 8, p 506.)" (Emphasis supplied [by the Court of Appeals].)

The emphasized language leads us to conclude that the broad statutory clause "maintain, preserve and keep the peace" includes all of the duties legally executed by a police officer. A police officer is expected to be, and should be, in a constant state of readiness to quell any disturbance. Officer Nevelle had parked his automobile at the intersection to watch for Elmer Weatherspoon who was wanted for assault. The mere fact that this officer was not in the act of making an arrest when he was assaulted does not necessarily mean that he was not preserving the peace. [*Id.,* pp 231-232.]

In *People v Stiles,* 99 Mich App 116; 297 NW2d 631 (1980) (per curiam), police officers were investigating a domestic dispute between the defendant and his wife. An officer entered one of the rooms in the apartment to talk to the defendant and to keep the parties separated; a scuffle ensued, and the defendant assaulted one of the officers. The Court of Appeals said:

It is clear that the officer was legally performing his duty when he approached the apartment in response to the call that a family disturbance was occurring therein. It further appears that the officer was accomplishing a lawful and proper police function of preserving law and order by attempting to ascertain whether defendant was still present in the apartment and by attempting to keep the parties separate. [*Id.,* pp 119-120.]

In *Krum, Weatherspoon,* and *Stiles,* the officers were seeking to preserve the tranquility of the citizenry. In *Krum,* they were seeking to apprehend two prison escapees. In *Weatherspoon,* the officer was looking for the defendant's brother who was wanted for assault and battery, was "in a constant state of readiness to quell any disturbance," and was thereby acting to maintain, preserve and keep the tranquility. In *Stiles,* the officers were attempting to prevent a recurrence of the domestic dispute that had necessitated their arrival on the scene.

In the instant case, however, the officers were not on patrol or in a place where other citizens were present. At the police station, they were not seeking to maintain, preserve and keep public order or tranquility, but rather were seeking to administer a Breathalyzer test.

III

The gist of the offense is not assault—the defendant in *Krum* did not assault the officer—but rather the "obstruction of justice" that results from interference with the performance of *specific law enforcement activities,* originally the service of process[10] or execution of a city or township ordinance,[11] and only later "keeping the peace."[12]

The statute does not proscribe obstruction, resistance, or opposition to all "lawful acts, attempts and efforts" of an officer. Refusing to take a Breathalyzer test, even assaulting a police officer, is not necessarily "obstruction of justice" within the intendment of this statute. The obstruction must occur while the officer is attempting to serve

[10] 1840 PA 39; 1846 RS, ch 156, § 23.

[11] 1863 PA 202.

[12] 1869 PA 24; 1931 PA 328, § 479.

process or execute a city or township ordinance or is acting to maintain, preserve or keep the peace—public order or tranquility.

Any assault on an officer while on patrol in a public setting *might* be seen as an interference with his ongoing efforts to maintain and preserve public order or tranquility. An officer on patrol tends to keep the peace by his presence. Citizens tend to slow down for a police car. It is reassuring to see police officers. Their mere presence is generally sufficient to maintain and preserve public order or tranquility. An interference with an officer on patrol *might* thus be seen as obstructing and resisting an ongoing effort to maintain and preserve public order or tranquility.

When, however, the officer is at the station house, his mere presence does not ordinarily tend to maintain and preserve public order or tranquility. The police generally separate the public from a person who is being detained, and thus there generally is no public to be tranquilized by the presence of the officer. While sitting at his desk or administering a Breathalyzer test, an officer is, to be sure, performing a police function. He is not, however, truly "in a constant state of readiness to quell any disturbance"—he is not at that time keeping the peace.

The statement in *Weatherspoon* that the "statutory clause 'maintain, preserve and keep the peace' includes all of the duties legally executed by a police officer" must be read in context. In *Weatherspoon,* the officer was assaulted while looking for a person who was wanted for assault and battery. The statement in 39 Am Jur, p 506, quoted in *Krum, supra,* p 361, that "obstruction of or resistance to a public officer in the performance of his duties is an offense at common law, and by

statute in all jurisdictions" is another generalization that cannot properly be read as excising from § 479 the qualification that the officer has been obstructed, resisted, opposed, or assaulted while "in [his] lawful acts, attempts and efforts to maintain, preserve and keep the peace . . . ."[13] Reading the statute as including all "duties legally executed by a police officer" reads out of the statute everything after the words "lawful acts, attempts and efforts," i.e., reads out of the statute "to maintain, preserve and keep the peace."

I do not wish to be understood as belittling the spittle of Little. It is not, however, a violation of the statute to fail to obey every command or direction given by a police officer.

IV

"Breaking the peace" may not be the other side of the coin of "keeping the peace." The prosecutor may be right, and the Court of Appeals, in the instant case, wrong.

There is at least a conflict in the decisions of the Court of Appeals, and the law is not settled. Peremptory disposition is not appropriate.

I adhere to the view that peremptory reversal should be reserved for those cases in which the

---

[13] In this regard, the following passage from 58 Am Jur 2d, Obstructing Justice, § 69, p 1120, is instructive:

> The obstruction of or resistance to a public officer in the performance of his duties is an offense at common law, and by statute.
>
> *Observation: The various statutes have the same purpose, but may differ in their description of the offense. Their wording varies to such an extent that each statute must be read to determine just what acts constitute the crime in the particular jurisdiction.* [Emphasis added.]

law is settled and no factual assessment is required.[14]

I would either grant or deny leave to appeal.

---

[14] *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867; 451 NW2d 304 (1990) (LEVIN, J., dissenting).

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").